IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ADMIRAL INSURANCE COMPANY | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:16-CV-2837 |
| | § | |
| GULSHAN ENTERPRISES, INC. | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND RECOMMENDATION ON
<u>PLAINTIFF'S AMENDED MOTION FOR SUMMARY JUDGMENT</u>**

This matter was referred by United States District Judge Vanessa D. Gilmore, for full pre-trial management, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket Entry #23). Admiral Insurance Company ("Plaintiff," "Admiral") has filed a motion for summary judgment seeking a declaration that it has no duty to defend or to indemnify Gulshan Enterprises, Inc. ("Defendant," "Gulshan"), in a pending state court lawsuit. (Plaintiff's Amended Motion for Summary Judgment ["Plaintiff's Motion"], Docket Entry #25). Gulshan has responded in opposition to Admiral's motion, and the insurer has replied. (Defendant Gulshan Enterprises, Inc.'s Response to Plaintiff's Amended Motion for Summary Judgment" ["Defendant's Response"], Docket Entry #26; Plaintiff's Reply to Defendant's Response to Plaintiff's Amended Motion for Summary Judgment ["Plaintiff's Reply"], Docket Entry #27). After reviewing the pleadings, and the applicable law, it is **RECOMMENDED** that Plaintiff's motion be **GRANTED**.

**BACKGROUND**

This declaratory judgment action was filed to resolve an insurance coverage dispute. The parties in this matter disagree on whether Admiral must defend and indemnify Gulshan in a lawsuit that was filed in a state district court ("Bauer lawsuit"), which seeks recovery for bodily

injuries sustained by Emily Bauer ("Bauer").[1] (Plaintiff's Complaint, Doc. #1). The plaintiffs in the Bauer lawsuit have alleged that Emily Bauer purchased synthetic marijuana from a gas station convenience store, Handi-Stop #79, and then suffered a "massive stroke" after ingesting the drug. (Plaintiff's Motion, Exhibit D, at 1(Fourth Amended Petition in the Bauer Lawsuit)). The Bauer plaintiffs allege further that Gulshan is a wholesale marketer and distributer of gasoline to Handi-Stop #79, and was the owner and/or operator of the store. (Plaintiff's Motion, Exhibit D, at 3, 5). Because of that, the Bauer plaintiffs allege that Gulshan, either negligently or intentionally, allowed the sale of the synthetic marijuana at Handi-Stop #79, and so caused the injury to Emily Bauer. (*Id.*).

After the Bauer lawsuit was filed, Gulshan demanded that Admiral defend it against the claims, in accordance with the terms of a commercial general liability ("CGL") insurance policy that was in effect at the time. (*Id.*). Admiral did agree to defend Gulshan, subject to a "full and complete reservation of rights."[2] (*Id.*). Admiral then filed this suit seeking a declaration that "there is no coverage available under the Admiral policy for the claims asserted against Gulshan in the Bauer lawsuit. . . ." (Plaintiff's Original Complaint at 4). Plaintiff also seeks a declaration that it has no duty to defend Gulshan in the Bauer lawsuit, because there is no coverage available under the policy at issue. (*Id.* at 5).

On June 26, 2017, Admiral moved for summary judgment on each of its claims for declaratory judgment. (Defendant's Motion). Plaintiff argues that a Specified Operations Endorsement in the disputed policy precludes coverage for any claims that resulted from Emily Bauer's alleged injuries. (*Id.*). Admiral argues, as well, that, based on the endorsement, the

---

[1] Although the Bauer lawsuit initially omitted Gulshan as a party, the Second Amended Petition, filed on March 6, 2016, added Gulshan as a defendant. (Plaintiff's Motion at 3).

[2] The reservation of rights letter stated that the "alleged purchase of synthetic marijuana may . . . be totally unrelated to 'wholesale gas distribution' or sales. . ." (Plaintiff's Motion at Ex. F, 2).

policy insures for bodily injuries caused by "wholesale gasoline sales" only. (Plaintiff's Motion at 5). Admiral contends that the Bauer lawsuit "does not allege facts within the scope of coverage," because it does not allege that the claimed injuries were caused by such sales. (Plaintiff's Motion at 11-17). Admiral insists, that, instead the Bauer lawsuit alleges facts which merely show that Emily Bauer was injured by the retail sale and purchase of non-gasoline items, not by "wholesale gasoline sales." (*Id.*). In response, Gulshan argues that it is Admiral's burden to prove coverage does not exist, and that it has failed to do so. (Defendant's Response at 7). In fact, Gulshan contends that there is a "presumption of coverage," and that any ambiguity must be resolved in its favor. (*Id.*). According to Gulshan, Admiral's reservation of rights letter acknowledges that the question of coverage "cannot be determined from the pleadings alone," and so there is a fact question on whether it is a covered loss, which precludes summary judgement. (*Id.* at 9). Gulshan further argues that there is a fact issue "as to what is included in the scope of 'wholesale gasoline sales'" which prevents a finding that the conduct alleged in the Bauer lawsuit is not covered under the policy. (*Id.* at 10). After reviewing the pleadings and the evidence presented, it is **RECOMMENDED** that Plaintiff's motion be **GRANTED**.

## STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "The [movant] bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998) (*citing Celotex v. Catrett*, 477 U.S. 317, 322–25 (1986)). Once the movant carries this initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See*

*Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991). The nonmovant must go beyond the pleadings and designate specific facts proving that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmovant may not rest on conclusory allegations or denials in its pleadings that are unsupported by specific facts. FED. R. CIV. P. 56(e). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986).

In determining whether genuine issues of material fact exist, "factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that a controversy exists." *Lynch*, 140 F.3d at 625. "A dispute regarding a material fact is 'genuine' if the evidence would permit a reasonable jury to return a verdict in favor of the nonmoving party." *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 651 (5th Cir. 2004). Thus, "[t]he appropriate inquiry is 'whether the evidence represents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005)(quoting *Anderson*, 477 U.S. at 251–52).

## DISCUSSION

Because this court has diversity jurisdiction over Plaintiff's declaratory judgment action, the substantive law of the forum state governs. *Erie Railroad v. Tompkins*, 304 U.S. 64, 78 (1938); *Hanna v. Plumer*, 380 U.S. 460, 465 (1965); *Arthur W. Tifford, PA v. Tandem Energy Corp.*, 562 F.3d 699, 705 n. 2 (5th Cir. 2009). As Texas is the forum state, its substantive and choice-of-law rules apply. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). The parties appear to agree that Texas law applies and they have waived any alternative choice-of-law argument. *Arthur W. Tifford, PA*, 562 F.3d at 705 n. 2, *citing Kucel v. Walter E. Heller & Co.*, 813 F.2d 67, 74 (5th Cir. 1987). Under Texas law, the construction of an insurance policy is

a question of law. *Stumph v. Dallas Fire Ins. Co.*, 34 S.W.3d 722, 729 (Tex.App.—Austin 2000, no pet.), *citing Coker v. Coker*, 650 S.W.2d 393–94 (Tex. 1983). Insurance policies are construed under the usual principles of contract law, and must be interpreted to give effect to the intent of the parties at the time the contracts were formed. *American States Ins. Co. v. Bailey*, 133 F.3d 363, 369 (5th Cir. 1998), *citing Canutillo Ind. Sch. Dist. v. Nat'l Union Fire Ins. Co.*, 99 F.3d 695, 700 (5th Cir. 1996); *Progressive County Mut. Ins. Co. v. Sink*, 107 S.W.3d 547, 551 (Tex. 2003). The terms of a contract are given their plain, ordinary, and generally accepted meaning unless the contract itself defines those terms differently. *Bituminous Cas. Corp. v. Maxey*, 110 S.W.3d 203, 208–09 (Tex.App.—Houston [1st Dist.] 2003, pet. denied), citing *W. Reserve Life Ins. v. Meadows*, 152 Tex. 559, 261 S.W.2d 554, 557 (1953).

If a contract can be given a definite or certain legal meaning, it is clear and unambiguous and the court will enforce it as written. *Building Specialties, Inc. v. Liberty Mutual Fire Ins. Co.*, 712 F.Supp.2d 628, 635 (S.D.Tex. 2010); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Industries, Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). However, if the contract language can be given two or more reasonable interpretations, it will be deemed ambiguous. *Id*. ("If a policy provision is uncertain or doubtful or is susceptible to more than one reasonable interpretation, it is ambiguous."). But "the fact that the parties disagree as to coverage does not create an ambiguity." *Gilbane Building Co. v. Admiral Ins*. Co., 664 F.3d 589, 597 (5th Cir. 2011), *citing Valmont Energy Steel, Inc. v. Commercial Union Ins. Co.*, 359 F.3d 770, 773 (5th Cir. 2004). As the Texas Supreme Court has explained,

> . . . [n]ot every difference in the interpretation of . . . an insurance policy amounts to an ambiguity. Both the insured and the insurer are likely to take conflicting views of coverage, but neither conflicting expectations nor disputation is sufficient to create an ambiguity.

*State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995).

5

"Language in insurance provisions is only ambiguous if the court is uncertain as to which of two or more meanings was intended." *Houston Petroleum Co. v. Highlands Ins. Co.*, 830 S.W.2d 153, 155 (Tex.App—Houston [1st Dist.] 1990, writ denied). Further, Gulshan is correct that, if an insurance policy is ambiguous or inconsistent, the construction that would afford coverage to the insured must govern. *Mid–Continent Cas. Co. v. Swift Energy Co.*, 206 F.3d 487, 491 (5th Cir. 2000) *citing Gonzalez v. Mission Am. Ins. Co.*, 795 S.W.2d 734, 737 (Tex. 1990). And, any exceptions or limitations that avoid an insurer's liability are to be construed "even more stringent[ly]." *Id.*; *Barnett v. Aetna Life Ins.*, 723 S.W.2d 663, 666 (Tex. 1987)(holding that construction of an exclusionary clause urged by insured must be accepted so long as it is "not unreasonable," even if the insurer's construction seems "more reasonable or a more accurate reflection of the parties' intent"); *see also Sczepanik v. State Farm Fire and Cas. Co.*, 211 F.3d 256, 257 (5th Cir. 2000) ("the Texas rule of law [is] that ambiguity involving an exclusionary provision of an insurance policy must be resolved in favor of the insured's construction provided the construction is reasonable").

In a typical liability insurance policy, the insurer assumes two different duties: the duty to indemnify and the duty to defend. *See Ohio Cas. Ins. Co. v. Time Warner Entm't Co.*, 244 S.W.3d 885, 890 (Tex.App.—Dallas 2008, writ denied). "An insurer must defend its insured if a plaintiff's factual allegations potentially support a covered claim, while the facts actually established in the underlying suit determine whether the insurer must indemnify its insured." *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 490–91 (Tex. 2008) (citing *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 310 (Tex. 2006)). Because these are separate duties, "an insurer may have a duty to defend but, eventually, no obligation to indemnify." *Id.* (*citing Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997)).

Defendant here bears the initial burden to demonstrate that coverage exists under the insurance policy at issue, while Admiral bears the burden to prove the applicability of any exclusion. *See Guar. Nat'l Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192, 193 (5th Cir. 1998) (citations omitted). To determine whether a duty to defend exists, the district court must apply the "eight corners" rule, and limit its review to the "four corners" of the insurance policy and the "four corners" of the allegations in the underlying complaint. *See National Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997); *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002) ("an insurer's duty to defend is determined solely by the allegations in the pleadings and the language of the insurance policy."). When considering the underlying pleadings, the court must focus on those factual allegations that show the origin of the damages, rather than on the legal theories advanced. *See Willbros RPI, Inc. v. Continental Cas. Co.*, 601 F.3d 306, 309 (5th Cir. 2010); *Continental Cas. Co. v. Hall*, 761 S.W.2d 54 (Tex.App.—Houston [14th Dist.] 1998, *cert denied Hall v. CNA Ins. Companies*, 495 U.S. 932 (1990) (pointing out that when a student suffered a hand injury from a school activity, it was a bodily injury claim that was excluded from coverage, and not a violation of the constitutional right to a safe educational environment which would be covered under the policy). For that reason, "[i]f a petition alleges facts that, *prima facie,* exclude the insured from coverage, [then] the insurer has no duty to defend." *Taylor v. Travelers Ins. Co.,* 40 F.3d 79, 81 (5th Cir.1994) (quoting *Adamo v. State Farm Lloyds Co*., 853 S.W.2d 673, 676 (Tex.App.—Houston [14th Dist.] 1993, writ denied), *cert. denied,* 511 U.S. 1053 (1994)); *Merchants,* 939 S.W.2d at 141 (denying a duty to defend, because the accidental discharge of firearm from the cab of a truck was not an injury arising from the use of the truck).

On the other hand, if it is unclear whether the third party's factual allegations do, in fact, state a covered cause of action, then the underlying complaint "must be liberally construed in

favor of the insured." *St. Paul Fire & Marine Ins. Co. v. Green Tree Financial Corp.-Tex.,* 249 F.3d 389, 392 (5th Cir. 2001) (citing *Terra Int'l v. Commonwealth Lloyd's Ins. Co.,* 829 S.W.2d 270, 272 (Tex.App.—Dallas 1992, writ denied). "The scope of the duty to defend is interpreted broadly: 'Where the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy.'" *Nat'l Cas. Co. v. W. World Ins. Co.*, 669 F.3d 608, 612–13 (5th Cir. 2012) (quoting *Nat'l Union Fire Ins.,* 939 S.W.2d at 141). Even so, "not every doubt requires resolution of the duty to defend in favor of the insured." *D.R. Horton–Texas, Ltd. v. Markel Intern. Ins. Co., Ltd* ., 300 S.W.3d 773, 778 (Tex.App.—Houston [14th Dist.] 2006), *aff'd in part and rev'd in part on other grounds*, 300 S.W.3d 740 (Tex. 2009). Courts will "not read facts into the petition," nor look outside of the pleadings, or "imagine factual scenarios which might trigger coverage." *Id.* at 778.

### *Admiral Has no Duty to Defend*

Applying the "eight corners" rule, the language of the insurance policy must be compared to the factual allegations in the Bauer lawsuit to determine if those allegations give rise to any claim within the policy coverage. *See Utica Nat'l Ins. Co. of Tex.*, 141 S.W.3d at 201. The insurance policy issued by Admiral to Gulshan states:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply. . . .
> Plaintiff's Motion, Ex. A, Section I, Coverage A: Bodily Injury and Property Damage Liability, 1.a.

The policy requires that any bodily injury must be caused by an 'occurrence,' which is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.* at Section V., 13 at p. 14).

Significantly, the policy also contains an express limitation on coverage through the inclusion of a "Specified Operations Endorsement." (*Id.* at Schedule AD 66 65 09 09). This endorsement limits insurance coverage to only those injuries which were "caused by the operations shown in the Schedule." The sole operation listed in the Schedule is "Wholesale Gasoline Sales." (*Id.*). Read together, these provisions require Admiral to defend and indemnify Gulshan from any suit seeking damages which resulted from bodily injury or property damage that was allegedly caused by "wholesale gasoline sales."

As noted, the state court plaintiffs have alleged that Emily Bauer was injured when she ingested synthetic marijuana that she had purchased from Handi-Stop #79. The Bauer lawsuit claims further that Gulshan had a Branded Marketer Agreement ("BMA") with ConocoPhillip,s which allowed it to be a "wholesale marketer and distributor" of ConocoPhillips brands to convenience stores. (Plaintiff's Motion, Exhibit D, at 5). That agreement explicitly required Gulshan to ensure that each Phillips 66 branded store, to which it delivered ConocoPhillips gasoline, did not permit the sale or use of illegal drugs, and did not engage in conduct that reflected unfavorably on the reputation of Phillips 66. (Id. at 5, 12). It is alleged that Gulshan owned and/or operated Handi-Stop #79, and so it was actually aware that the store was selling synthetic marijuana in violation of the BMA. (*Id.* at 11-12). The Bauer plaintiffs complain that Gulshan received reports from Phillips 66, and also performed its own inspections of the store, allegedly leading to direct knowledge of the operation and sales at the store. (*Id.*). Gulshan argues that these allegations are sufficient to raise a fact question on whether this was a covered loss under the policy. (*Id.*).

To survive summary judgment, however, Gulshan must show that the facts alleged in the Bauer lawsuit fall within the scope of coverage of the policy issued by Admiral. It has failed to do so. The plain language of the "Specified Operations Endorsement" limits insurance coverage

to only those accidents reportedly caused by Gulshan's "wholesale gasoline sales." But Gulshan argues that if the phrase, "wholesale gasoline sales," is construed broadly enough, it includes the conduct alleged in this case. Gulshan suggests that a reasonable definition "could include" the duties and obligations which are set out in the BMA, which are meant to prevent illegal conduct at the store, because those obligations are a part of its "wholesale gasoline sales." (Defendant's Response at 6, 10))("Based on these allegations, Gulshan contends that 'if Gulshan was not involved in wholesale gasoline distributions, there would be no Branded Marketer Agreement, and therefore no basis to hold Gulshan liability for Bauer's injuries.'"). In light of this proffered alternative definition, Gulshan argues that "there is a fact issue as to what is included in the scope of 'wholesale gasoline sales,'" and so a "presumption of coverage" is triggered. (Defendant's Response at 11). That argument fails.

Gulshan is only entitled to a presumption of coverage if the terms of the policy are ambiguous. *See, Taylor*, 40 F.3d at 83 (the rule giving the insured "the benefit of the doubt" applies only when the policy provisions are ambiguous). In this case, the policy at issue is explicit in insuring against only those accidents that are caused by Gulshan's "wholesale gasoline sales." Although Gulshan argues that that phrase is unclear and subject to more than one meaning, the court finds otherwise. If, as here, the policy does not define a word or phrase, the court will give that word or phrase its ordinary and generally accepted meaning. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 158 (Tex. 2003) (finding that the ordinary meaning of "repair" in an automobile policy means only to "bring back to good or useable condition" and does not include "diminished value"). As Admiral points out, the ordinary and generally accepted meaning of "wholesale gasoline sales" is the sale of gasoline in large quantities to retailers, who then sell it to consumers or end-users. (Plaintiff's Motion at 10) (citing BLACK'S LAW DICTIONARY and OXFORD AM. DICTIONARY); *see also, Heritage Resources, Inc. v.*

*NationsBank,* 939 S.W.2d 118, 121–22 (Tex.1996) (using external references to determine the plain and ordinary meaning of a term). In the absence of another, reasonable alternative definition, there is no ambiguity. *Mescalero Energy, Inc. v. Underwriters Indem. General Agency, Inc.*, 56 S.W.3d 313 (Tex. 2001) (analyzing whether alternative definition provided by expert in his testimony established a reasonable definition of an industry term). The phrase "wholesale gasoline sales" is straightforward and not reasonably subject to differing interpretations. To accept Gulshan's definition would require the court to entirely ignore the words "wholesale" and "gasoline" in determining the meaning of the phrase. Gulshan's suggestion that it "might include" the retail sale of synthetic marijuana and operation of a retail store, is not a reasonable alternative. *Gilbert Texas Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 133 (Tex. 2010) (rejecting insured's argument that a "contractual liability" exclusion applies only to a subset of contracts because it was not a reasonable interpretation of the exclusion). The policy is not ambiguous, so Gulshan is not entitled to a presumption that its proposed interpretation is correct and affords coverage. *See, Taylor ,* 40 F.3d at 83.

Gulshan next insists that there "might" be some relationship between the injury alleged and "wholesale gasoline sales," and so the court should "draw inferences from the petition that may lead to a finding of coverage." (Defendant's Response at 11)("the pleadings do not negate the possible interrelation between Gulshan's wholesale gasoline sales and the ongoing activities"). Although a court should construe the pleadings liberally, to favor coverage, theories of negligence that are contradicted by the factual allegations are insufficient to trigger a duty to defend. *See, Huffhines v. State Farm Lloyds*, 167 S.W.3d 493, 501 (Tex.App.—Houston [14th Dist.] 2005, no pet.) (stating that "bare bones" allegations of negligence as an alternative pleading to the factual allegations of knowing misrepresentation did not initiate a duty to

11

defend). The policy at issue here does not extend coverage to injuries that are caused by activities that might be "interrelated" with the "wholesale gasoline sales," or even to injuries that "arise out of" "wholesale gasoline sales." Instead, it insures only injuries that are "caused by" "wholesale gasoline sales" alone. Texas courts have long recognized that the phrase "caused by" is much narrower in scope than the phrase "arise out of." For an injury to "arise out of" an action means only that there is a causal connection or relation. *EMCASCO Ins. Co. v. American Intern. Specialty Lines Ins. Co.*, 438 F.3d 519 (5th Cir. 2006) ("'[a]rising out of' are words of much broader significance than 'caused by.' They are ordinarily understood to mean 'originating from' 'having its origin in,' 'growing out of' or 'flowing from,' or in short, 'incident to, or having connection with')(citation omitted). Although the Bauer lawsuit alleges, and Gulshan contends, that there is a connection between the Defendant's wholesale gasoline sales and the injury, there are no factual allegations in the state court pleadings to support an inference that the injuries were "caused by" the "wholesale gasoline sales." *See Utica Nat'l Ins. Co. v. Am. Indem. Co.*, 141 S.W.3d 198, 200 (Tex. 2004)(observing that "due to" requires a more direct type of causation than "arising out of," which the court defined as requiring only a simple causal connection or relation and not direct or proximate causation). The facts that have been alleged show clearly that the injuries were not caused by "wholesale gasoline sales," but instead were caused by the purchase and use of synthetic marijuana.

Gulshan also insists that, because Admiral did not disclaim coverage from the outset, but defended under a reservation of rights, it has admitted that it is unclear whether the pleadings state a claim that is covered by the policy, and so summary judgment is improper. (Defendant's Response at 8) ("Admiral recognizes that coverage is not totally barred by the face of the [complaint]."); *see generally, Trinity Universal Ins. Co. v. Emp'ers Mut. Cas. Co.,* 592 F.3d 687, 691 (5th Cir. 2010) (stating that if the facts alleged in the complaint do not clearly preclude

coverage, the general rule is that the insurer must defend if there is potentially a claim within the coverage of the policy). The law is clear, however, that an insurer which offers a defense subject to a reservation of rights does not concede that it is obligated to defend the insured.[3] *See Admiral Ins. Co. v. Petron Energy Inc.*, 3:11-CV-02524-M, 2013 WL 5910880, *11 (N.D. Tex. February 28, 2014) (rejecting the insured's argument that agreement to defend under a reservation of rights was proof that insurer knew there was a duty to defend). Admiral has argued in its motion that the Bauer lawsuit does not describe factual allegations that potentially state a claim covered by the policy, but describes only conduct that is excluded from coverage. (Plaintiff's Motion at a11)("None of these allegations triggers Admiral's duty to defend . . . because they do not allege facts showing that the injuries for which the plaintiffs seek recovery in the Bauer lawsuit were caused by 'wholesale gasoline sales.'"). In its motion, Admiral has shown that the complaint alleges only facts that are outside the coverage of the policy. For that reason, Admiral should be granted judgment on its action for a declaration that it has no duty to defend Gulshan in the Bauer lawsuit.

### *Admiral has no Duty to Indemnify*

Admiral has also moved for summary judgment on its duty to indemnify Gulshan. (Defendant's Motion). The duty to indemnify "is triggered by the actual facts that establish liability in the underlying lawsuit." *Guar. Nat'l Ins. Co. v. Azrock Indus. Inc.*, 211 F.3d 239, 243 (5th Cir. 2000). "Accordingly . . . an insurer's duty to indemnify [usually] cannot be determined until after the underlying suit has been resolved." *Columbia Cas. Co. v. Georgia & Florida RailNet, Inc.*, 542 F.3d 106, 111 (5th Cir. 2008) (citing *Collier v. Allstate County Mut. Ins. Co.*, 64 S.W.3d 54, 62 (Tex.App.—Fort Worth 2001, no pet.)). However, there is an exception to this

---

[3] Because it is not an admission of coverage, it is not necessary to determine whether the reservation of rights letter is admissible as extrinsic evidence. *See generally, Energy Res., LLC v. Petroleum Solutions Int'l, LLC,* Civil Action No. H:08–656, 2011 WL 3648083, at *6 (S.D.Tex. Aug.17, 2011) (analyzing whether extrinsic evidence is admissible to determine coverage).

13

mandate "when the insurer has no duty to defend and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify." *Id*. (quoting *Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997)). That principle applies here, and Admiral's motion should be granted. *Id*. Emily Bauer was injured when she ingested synthetic marijuana. There are no facts that could be proven at trial that could tie Bauer's injuries to Gulshan's "wholesale gasoline sales." The retail sale of synthetic marijuana is simply and undeniably not a "wholesale gasoline sale." *See, Farmers Tex. County Mut. Ins. Co. v. Griffin,* 955 S.W.2d 81, 84 (Tex.1997) (no "facts can be developed in the underlying tort suit that can transform a drive-by-shooting into an 'auto accident.'"). Admiral, therefore, should be granted judgment on its action for a declaration that it has no duty to indemnify Gulshan in the Bauer lawsuit.

## CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's Amended Motion for Summary Judgment be **GRANTED**.

The Clerk of the Court shall send copies of the Memorandum and Recommendation to the respective parties, who will then have fourteen business days to file written objections, pursuant to 28 U.S.C § 636(b)(1)(c), General Order 02-13, S.D. Texas. Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208; copies of any such objections shall be delivered to the chambers of Judge Vanessa D. Gilmore, Room 9513, and to the chambers of the undersigned, Room 7007.

**SIGNED** at Houston, Texas, this 15th day of November, 2017.

**MARY MILLOY**
**UNITED STATES MAGISTRATE JUDGE**